OVERTON, J.
 

 J. W. Murrell, on January 28, 1920, sold certain land in the town of Mánden, consisting of approximately 65 acres, to A. W. Recker for $9,500 cash. This deed was filed for record on February 17,1920. On June 19, 1920, Recker sold an undivided one-half interest in approximately 39% acres of said land to H. O. Byrd.
 

 As Murrell was the owner of record of all of said land on January 1,1920, it was assessed-to him, under the law, for the taxes of 1920.
 
 *385
 
 Murrell refused to pay the taxes for the reason that he was no longer the owner of the land. The sheriff and tax collector advertised the entire 65 acres for sale in the name of.J. W. Murrell as owner, in whose name it was assessed, for the taxes due the state and parish thereon, which, together with costs, amounted to $259.16, and on September 17, 1921, the day of sale, adjudicated said property to Alberta Glass, less a part thereof previously sold by Byrd and Recker. The quantity adjudicated to Glass consisted of about 40 acres, more or less.
 

 The town of Minden,' through its marshal and tax collector, also advertised the 65 acres for sale in the name of Murrell, as owner, for taxes due it, and on October 8, 1921, adjudicated the entire tract to Glass for the taxes, interest, and costs due thereon, which amounted to $139.65.
 

 As H. O. Byrd, by virtue of the deed to him by Recker, was, on January 1, 1921, the owner of record of an undivided one-half interest of a part of said 65 acres, or, as fixed by the assessor, of
 
 19Y2
 
 acres, said interest was assessed to him for the taxes of 1921, and the remaining undivided one-half interest, in the same part of the tract, was for the year 1921 assessed to A. W. Recker, he being the owner of record thereof on January 1st of that year. The taxes for the year 1921, on said interests, were not paid the state and parish by either Byrd or Recker, and the sheriff and tax collector therefore advertised said interests for sale for those taxes, and on September 2, 1922, adjudicated the interest assessed to Byrd and also that assessed to Recker to J. L. Dupuy for the state and parish taxes due thereon. It does not appear, as relates to the taxes for the year 1921, what was done with the remaining 26 acres of the original tract of 65 acres acquired by Recker from Murrell.
 

 By an act of sale passed in March, 1922, which was prior to the making of the last two tax sales mentioned, and before the year for redemption had elapsed on the first two sales, Glass sold to Dupuy all of the interest he had acquired by the first two sales, which necessarily included such interest as he may have acquired in the entire 65-acre tract by the sale made by the town of Minden to him, in the name of Murrell, as owner, for the taxes of 1920. Something over a year later Dupuy sold an undivided half interest in the land, described in the last two tax sales made, and included in the first two, to H. C. and A. S. Drew.
 

 Byrd and Recker, the plaintiffs herein, did not exercise the right to redeem the property, but, after permitting the time for redemption to lapse, instituted the present suit against Dupuy and H. O. and A. S. Drew for the purpose of annulling the four tax sales mentioned, and of being decreed the owners of that part of the 65-acre tract conveyed by the second two tax sales mentioned, and included in the first two, on the theory that they are owners in indivisión of said part consisting of approximately 39% acres, and that said tax sales are null and void.
 

 One of the grounds alleged for annulling the tax sales is that in not one of them was any notice of delinquency and of intention to sell given to plaintiffs, who were the owners of the property at the time of the sales.
 

 As relates to the tax sale for the state and parish taxes for 1920, made by the sheriff and tax collector, and as relates to the sale for municipal taxes for the same year, made by the
 
 town
 
 of Minden, the only notice of delinquency and of intention to sell given by the state and parish and by the municipality was given to Murrell, in whose name the property was assessed. The Constitution requires that notice be given to the delinquent in the manner prescribed by law, by which is meant the delinquent owner, who is owner, as appears from the conveyance records, at the time the notice is required to be given without reference to who may have been owner when the assessment was made.
 
 *397
 
 Const. § 11, art. 10. Such was the interpretation given a similar provision contained in article 210 of the Constitution of 1879, and article 233 of the Constitutions of 1898 and 3913. Geddes v. Cunningham, 104 La. 313, 29 So. 138; Tensas Delta Land Co. v. Sholars, 105 La. 357, 29 So. 908; Pitre v. Schleslinger, 110 La. 234, 34 So. 425; Wilkerson v. Wyche, 158 La. 596, 104 So. 381. Since, therefore, although the property was correctly assessed in the name of Murrell, as owner, for the taxes of 1920, for he was owner on the 1st day of January of that year, and the law gives its sanction to the assessment of property in the name of the one who is owner on the 1st of January' of the year in which the assessment is made, yet, as Murrell ceased to be owner shortly thereafter, and was not owner when the taxes became delinquent and the time arrived to give notice of delinquency and of intention to sell, which time for notice did not arrive until January 2, 1921 (Act 170 of 1898, § 50), it follows that the notice to Murrell was not a compliance with the Constitution, and was therefore ineffectual. At that time, and when the notice was given, Byrd and Becker were the owners of record-of the property, and had been for some months. They were entitled to notice. The evidence discloses, however, that they were given none. •
 

 The town of Minden did not sell the property for the taxes of 1921, but, as we have seen, the sheriff and tax collector sold approximately 39 acres of it to Dupuy for the state and parish taxes of that year, 19% of said acres as the property of Byi-d, and the remaining 19% acres as the property of Becker, under assessments made in the name of each. As relates to these sales, the only evidence of the giving of notice of delinquency and of intention to sell is the following: In the procés verbal of the sale made of the property assessed to Byrd, the sheriff and tax collector recites that notice was mailed to Byrd, and, in the procés verbal of the sale made of the property assessed to Becker, a similar recital is made as to Becker, but the sheriff does not say in either instance to what address the notice was mailed. But the evidence aliunde the procés verbal shows that no notice whatever was mailed either to Byrd or Becker notifying them of the intention to sell for the taxes of 1921, and that the only notice attempted to be given either of them, or any one else, for that year, was a notice by publication in the official journal as for nonresident owners whose addresses are unknown. Byrd and Becker were both nonresidents, but the address of each could have been easily ascertained. The deed by which Becker sold an undivided interest in the land to Byrd, and under which the property was assessed as belonging to Becker and to Byrd, was of record in the conveyance books of the parish when the time arrived to send the notices of delinquency. This deed shows that the address of Becker and of Byrd was St. Louis, Mo. The evidence of Murrell shows that when notice of delinquency was received by him relative to the taxes of the preceding year, he told the sheriff and tax collector that he had sold the property to Becker, and that to the best of his recollection he gave him the address of Byrd. With this information before him the sheriff might have gone to the conveyance records and have ascertained the address of Becker, if, indeed, Murrell was not in a position to, and did not, give him the addresses of both Becker and Byrd. Moreover, it appears that before the time arrived to send notices of delinquency for the taxes of 1921, and in fact, before the sale for the taxes of 1920 had been made, Byrd wrote the deputy tax collector, in charge of the collection of state and parish taxes, inquiring about the taxes on the property in question. From the oral evidence given, it appears that his letter was written on stationery containing the letter head, of Byrd and showing his address. It also .appeal's that, at about the time he
 
 *399
 
 wrote the deputy tax collector, Byrd was in correspondence with A. S. Drew relative to the taxes on the property, and that Drew, acting for Byrd, saw the deputy tax collector in charge of the collection of state and parish taxes relative to the taxes due by Byrd, and discussed with him matters relating thereto. From this it appears that the tax collector could have ascertained Byrd’s address from Drew, and, as some of this correspondence was with the Byrd-Recker Realty Company, he could have ascertained, from Drew, Reciter’s address also. It may be observed in this connection that, while the tax collector for the town of Minden failed to obtain Reciter’s correct address, the tax collector having apparently inquired of only one source, yet that he obtained Byrd’s address from a bank in Minden, sent Byrd a notice of delinquency for the taxes of 1921, and received payment from him.
 

 Under the circumstances stated above, we are not of the opinion that the sheriff and tax collector was justified in treating Byrd and Recker as owners whose addresses were unknown. Most, if not all, of the foregoing sources of information were brought home to the sheriff and tax collector, an'd had he made even an ordinary effort to ascertain the addresses he would have succeeded, in our judgment. Notice of delinquency and of the intention to sell is an important step in the sale of property for taxes, and is jurisdictional in its nature. A tax collector, before resorting to the method of giving notice by publication, should use the sources of information within his knowledge and at his command to ascertain the address of the tax debtor, to the end that he may notify him by registered mail and
 
 thereby give
 
 the notice which the law properly deems the
 
 more
 
 effectual. See, in this connection, Jones v. Curran, 156 La. 1055, 101 So. 415.
 

 Our conclusion is that the notice which the tax collector attempted to give by publication was not, in this instance, a compliance with the law, and was therefore wholly ineffectual.
 

 But defendants argue that we should not'annul the tax sales on the ground that, before making them, the tax collectors charged with the duty of giving notice failed to give the notices required by law. Defendants say that plaintiffs had knowledge of the fact that their taxes had not been paid, and that at least one of them corresponded with reference to their payment, i>rior to the making of the first sale, and hence, they argue, in effect, that plaintiffs would not have been placed in a better position had they received notice from the state and from the municipal tax collectors. The answer-, however, is that the informal knowledge which plaintiffs had does not supply the place of the notice required by the Constitution and the law.
 

 Defendants also argue that, as plaintiffs were in Minden after the first two tax sales had been made, and before the period for redeeming the property had expired, and were offered opportunities to redeem the property, but refused to do so, that they should not be permitted to annul the sales now after the property has increased in value. The answer to this argument is that by refusing to redeem the property plaintiffs did not abandon it, but still possessed the right to annul the tax sales, which right is not lost by the refusal to redeem.
 

 Defendants also plead against plaintiffs’ demand what they incorrectly
 
 term
 
 the prescription of one year. By this plea they have reference to the period of redemption, fixed by law at one year, for redeeming property from tax sale. However, plaintiffs’ action is not one to enforce the right to redeem
 
 property.
 
 It is one to annul tax sales and thereby recover property. The plea is not appropriate to the case, since plaintiffs are not seeking to exercise the right of redemption.
 

 Defendants also file what they term the prescription of 18 months, and explain it by
 
 *401
 
 saying that it is a prescription based on the fact that when notice is served on a tax debtor, and there are irregularities in the tax deed, the tax debtor has six months from the expirati'on of the year for redeeming the property within which to file suit. Defendants are not wholly correct in their statement of the law. Section 11 of article 10 of the Constitution provides, among other things, that:
 

 “No sale of property for taxes shall be set aside for any cause, except on proof of payment of the taxes for which the property was sold prior to the date of the sale, unless the proceeding to annul is instituted within six months from service of notice of sale, which notice shall not be served until the time of redemption shall have expired and within three years from the date of the recordation of the tax deed, if no notice is given.’ * * * ”
 

 And the same section provides that:
 

 “The manner of notice and form of proceeding to quiet tax titles shall be provided by law.”
 

 Similar provisions were contained in the Constitution of 1S98, and pursuant to them the Legislature adopted Act 101 of 1898, providing the manner of notice and form of proceeding to quiet tax titles. The notice is required to be given in a suit to quiet the title, and judgment is supposed to be rendered therein. In this instance no such suit was filed, and hence the required notice was not given by defendants or their authors. Therefore the plea has nothing upon which to rest.
 

 Defendants also plead against plaintiffs’ demand the prescription or peremption of three years, provided by section 11 of article 10 of the Constitution, which section, in so far as pertinent, is quoted above. Defendants’ contention with reference to this prescription seems to he that three years intervened between the recordation of .the first tax sales made, that is, those made by the sheriff and tax collector and by the town for the taxes of 1920, and the service of citation in this suit, and that, since such is the ease, the prescription is well founded.
 

 The citations and the returns of the sheriff thereon are not in the record, and hence, were defendants correct in their assumption that the date of the service of citation is a factor in determining whether the prescription now under consideration accrued, it would be necessary to take steps to •have copies of them placed in the record. However, in our view, the date of the service of - citation is not a factor in determining whether the prescription of three years accrued. The two dates to be considered in determining that question are the date of the recordation of the tax deed attacked and the date on which the proceeding to annul is instituted, for section 11 of article 10 of the Constitution, quoted above, provides, in so far as .relates to the prescription of three years, that no tax sale shall be set aside, except on proof of the payment of the taxes for which the property' was sold, prior to the date of sale, unless the proceeding to annul is instituted within three years from the recordation of the tax deed. The proceeding to annul is instituted when the suit is filed, not when citation is served, for citation follows the institution of the suit. In the case at bar, 'the first two tax sales were recorded on December 9, 1921, and the present suit to annul them was filed or instituted on September 15, 1924, less than three years from the date of the recordation of the sales. Hence it is clear that, with reference to the first two tax sales, the proceeding to annul was ■ instituted before the prescription of three years accrued, and, as the remaining tax sales attacked herein were made and recorded later, it follows that the proceeding to annul them was also instituted before the prescription of three years accrued.
 

 For the foregoing reasons our conclusion is that the tax sales are null for failure to give notice of delinquency and of intention to sell, and that the prescriptions pleaded are not well founded.
 

 Defendants have asked, in the event
 
 *403
 
 that the sales should be annulled, that they; have judgment for the taxes paid by them and their authors, including those for which the property was sold, and for the costs paid that are incidental to the sales, and that plaintiffs be not' placed in possession until the same are paid.
 

 It is provided in section 11 of article 10 of the Constitution that:
 

 “No judgment annulling a tax sale shall have effect until the price and all taxes and costs paid, with ten per cent, per annum interest on the amount of the price and taxes paid from date of respective payments, be previously paid to the purchaser; provided, this shall not apply to sales annulled on account of taxes having been paid prior1 to the date of sale.”
 

 The evidence shows that the taxes paid, which include the price paid, are as follows:
 

 State and Town Year. Parish Taxes.. ij?axes.
 

 J920 ................................. $259 16 $1«9 35
 

 1921 ................................. 66 91 4,50
 

 1922 ...........:..................... 48 30 20'48
 

 1923 ................................. 79 31 43 54
 

 1924 ................................. 115 50 52 00
 

 $569 18 $300 87
 

 The costs paid amount to $5. Plaintiffs concede the correctness of the foregoing amounts paid except the correctness of the amount demanded for the town tax for 1920, which is the purchase price paid in the sale made by the town. Plaintiffs’ contention is, as to that item, that only a part of the land sold by the’town in that sale is presently in contest, and that A. S. Drew, one of the defendants in the case, and of counsel therein, admitted in his testimony that, for that reason, the item mentioned should be reduced to 4%5 of the amount stated. We fail to find in Mr. Drew’s evidence any such admission, though we do find that Mr. Drew expressed the view, in giving his evidence, in answer to a question propounded to him on cross-examination, that he thought that, for the reason that only a part of the land sold in that sale is in contest here, the item mentioned would have to be reduced. Mr. Drew was, in this instance, only expressing his legal opinion as to whether the item should be reduced, and did not intend to surrender anything due himself or his clients. As a matter of fact, plaintiffs have sued to annul the entire tax sale made by the town, which they necessarily had to do' in order to recover any part of their property sold. It is true that, in praying to be decreed owners of the property sold, they pray to be decreed owners of only a part of it; still this does not relieve them of the obligation of paying, as required by the section of the Constitution cited, the entire purchase price paid in order to recover the part of the property which they desire to recover. Our conclusion therefore is that defendants are entitled to this entire item.
 

 On the amounts stated in the foregoing table, defendants claim a penalty of 20 per cent., which they also term interest. Defendants are not entitled to the penalty claimed, which is allowed only in cases of redemption, but they are entitled, under section 11 of article 10 of the Constitution, to 10 per cent, per annum interest on the purchase price and on the taxes paid from the respective dates of payment. Applying this rule, defendants are entitled to 10 per cent, per annum interest on the item of $259.16 from September 17, 1921, this being the purchase price paid for the property in the sale made by the sheriff and tax collector for the taxes of 1920, and to like interest on $06.91, the aggregate of the amounts paid in the sales made by that official for the state and parish taxes of 1921 from September 2, 1922, and on $139.25, this being the purchase price paid in the sale made by the town, from October S, 1921, and on each item of the remaining taxes paid, and set forth in the foregoing table, from January 1st of the year following the one for which the tax was levied, these dates
 
 *405
 
 being deemed by plaintiffs, and not questioned by defendants, as the dates on which the payments were made.
 

 Before closing, we should observe that defendants filed an exception of no cause or right of action to plaintiffs’ demand. This exception is based, as appears from defendants’ brief, upon the ground of misjoinder of parties plaintiff, the position of defendants being that each plaintiff should have sued sei>arately to annul the sales that affected his interest in the property in controversy. Whatever merit, if any, the ground constituting the basis of the exceptión may have, that ground is not covered by an exception merely setting forth, which is the case here, that plaintiffs’ demand shows no cause or right of action. The ground should have been specifically pleaded in an exception of misjoinder of parties plaintiff.
 

 For the reasons assigned, the judgment appealed from is annulled and reversed, and it is now ordered, adjudged, and decreed that plaintiffs have and recover judgment against defendants annulling and setting aside said tax sales and recognizing them as the owners of the. property sued for, and it is further ordered and decreed that defendants have and recover judgment against plaintiffs for the sum of $S70.05, consisting of the price paid 'for said property and of the taxes paid thereon, together with 10 per cent, per annum interest on the respective payments made, from the date of each payment, as fixed in the body of this opinion, and that defendants have judgment for the sum of $5, being the costs .paid by them in connection with said sales. It is further ordered that plaintiffs be not placed in possession of the property sued for until the payment of said price, taxes, and interest; that the right of defendants to claim the taxes, if any, paid bya them on said property pending this appeal be reserved ; and that defendants pay the costs of this and of the lower court.