COLE, Judge.
The issue presented here is whether or not the tax sale of plaintiff’s property should be annulled due to insufficiency of notice. Because we find plaintiff-appellant did not receive the required notice, we reverse the judgment of the trial court and hold the sale annulled. The following facts were stipulated to by the parties.
Appellants Clell M. Richards and Judy Simmons Richards are the owners of three tracts of land located in Livingston Parish.[1] They acquired this property on January 20, 1973, as reflected in the conveyance records of Livingston Parish. An act of mortgage, in favor of Campus Federal Credit Union, was also duly recorded in that parish. Appellants took possession immediately and continue to reside on the property to this day.
Some time prior to May 22, 1979, the sheriff of Livingston Parish sent a notice of tax delinquency by certified mail to the appellants at the mailing address shown on the deed by which they acquired the property. The letter was returned to the sheriff’s office with the notation that the letter was not delivered because the Richards had moved and the letter was “not forwarda-ble.” The appellants never received the delinquency notice. Notice of the tax sale was published in the Denham Springs News on April 17,1975, and on May 19, 1975, prior to the actual sale. The defendant-appellee, Magee Martin, purchased the property at a tax sale on May 22, 1979.
Appellants filed this suit to have the sale annulled, naming Magee Martin and the sheriff of Livingston Parish as defendants. Martin answered, denying all allegations and filed a reconventional demand against appellant, seeking to have the tax deed confirmed and quieted under La.R.S. 47:2228. Rather than having a trial the parties simply submitted the stipulated facts and argued in briefs. Judgment was rendered dismissing plaintiff’s claim against Martin and the sheriff and granting Martin’s reconventional demand to have his title quieted. Plaintiff then filed this appeal, arguing he did not receive the notice required by La.R.S. 47:2180 B.[2]
*1155 We have reviewed the record and conclude the stipulated facts demonstrate clearly appellants did not receive proper notice. The facts stated the certified letter was returned to the sheriff who then advertised in the newspaper. There is no evidence showing he made any effort to obtain the correct address of the appellant property owners, nor is there any evidence of the proces verbal required by the statute.
This court has stated unequivocally in recent years that when a sheriff does not take measures to locate the property owner the tax sale may be annulled. In Sheridan v. Commercial Guaranty & Brokerage Corp., 292 So.2d 317 (La.App. 1st Cir. 1974), the sheriff sent the tax notice to the wrong address and the notice was returned with the notation “moved, left no address.” The sheriff took no further steps to locate the tax debtor and proceeded with the sale. The court stated as follows:
“It is well established that LSA-R.S. 47:2180, and its statutory predecessors, require that notice of delinquency be given a taxpayer before his property may be sold for nonpayment of taxes. It is also well settled that where mailing of such notice is required, and a mailed notice is returned to the tax collector undelivered or unclaimed, it is incumbent upon the tax collector to take additional reasonable steps to notify the taxpayer, and failure of the tax collector to perform this obligation renders a tax sale null and void.” (Citations omitted.)
In Childress v. Johnson, 387 So.2d 1217 (La.App. 1st Cir. 1980), the certified letter addressed to “Johnson, Obie & Shirley, Kentwood, LA. 70444,” was delivered to the post office and returned by the post office as “unclaimed.” No effort was made to locate the tax debtors and the property was sold. The court cited Sheridan, supra, and held the sale was annulled for lack of sufficient notice. The court noted the post office had not notified the debtors the letter had arrived for them and that if the tax collector had visited the property he would have found the debtors to be residing there. The same is true in the present case for the debtors had resided at the adjudicated property since the purchase in 1973. It was incumbent upon the sheriff to make some attempt to notify them of the delinquency.[3]
Most recently, in Bryant v. T. C. B. Enterprises, 395 So.2d 823 (La.App. 1st Cir. 1981), this court again annulled a tax sale due to insufficient notice. In this case the tax notice was sent to an out of state address and returned as “not deliverable as addressed” and “no forwarding order on file.” Evidence at trial showed the general practice was to mail the notice to the first owner listed on the assessment rolls, even though other owners (heirs) were also listed. When the notice was returned “undeliverable” to the sheriff’s office the only other step usually taken was to check with the assessor’s office to see if a new owner was listed. If no such owner was listed, the property was put up for sale. The court concluded the notice was insufficient under La.R.S. 47:2180 and ordered the sale annulled. We find the same reasoning to be applicable here.
For the foregoing reasons we reverse the judgment of the trial court and decree the tax sale of the property described herein, recorded in COB 200, page 263 of the conveyance records of Livingston Parish, to be annulled. Costs are assessed against the sheriff of Livingston Parish, as prescribed by law.
REVERSED.
APPENDIX TO NUMBER 14,585
Three (3) certain tracts or parcels of land situated in the Parish of Livingston, State *1156 of Louisiana, being described herein as Tract No. 1, Tract No. 2 and Tract No. 3, as follows:
TRACT NUMBER 1:
All that certain tract or parcel of land lying and being situated in Section 27, Township 6 South, Range 3 East, Livingston Parish, Louisiana, more particularly described as follows, to-wit: From the Southwest corner of said Section 27, run East 785 feet to point of beginning; from said point of beginning run East 763 feet to margin of Lockhart Crossing Road; thence North 57 deg. West 210 feet; thence South 77 deg. 35 min. West 560 feet to point of beginning, containing 1 acre and being further shown on plat of survey made by J. C. Kerstens, C. E. dated July 11,1962. Acquired by Ronald D. Thomas from Reed Erickson at COB 131, page 514, records of Livingston Parish, Louisiana.
TRACT NUMBER 2:
All that certain tract or parcel of land lying and being situated in Section 27, Township 6 South, Range 3 East, Livingston Parish, Louisiana, more particularly described as follows, to-wit: From the Southwest corner of said Section 27 run North 69 deg. 30 min. East 973.7 feet to a point on Lockhart Road; thence South 52 deg. East 224 feet; thence South 60 deg. East 89 feet; thence South 74 deg. 45 min. East 25.3 feet; thence South 77 deg. 35 min. West 736 feet; thence West 468 feet to point of beginning containing 3.86 acres according to a plat made by J. C. Kerstens, C. E. dated March 11, 1969. Acquired by Ronald D. Thomas from Quaid, et. al. at COB 142, page 596, records of Livingston Parish, Louisiana.
TRACT NUMBER 3:
A strip of land lying and being in Section 27, Township 6 South, Range 3 East, Livingston Parish, Louisiana, containing one (1) acre, measuring 65 feet in width and running parallel and adjacent to the one acre tract of land acquired by Ronald D. Thomas by act recorded in Conveyance Book 131, entry 63542. Said tract being further described according to a plat of survey made by J. C. Kerstens, dated January 11, 1968, as follows: From the Southwest corner of said Section 27, run East 468 feet to point of beginning. From said point of beginning run East 310 feet; thence North 77 deg. 35 min. East 560 feet to Lockhart Crossing Road; thence along said road North 74 deg. 45 min. West 144 feet; thence South 77 deg. 35 min. West 736 feet to point of beginning. Acquired by Ronald D. Thomas from Quaid, et. al. at COB 134, page 476, records of Livingston Parish, Louisiana.

. The properties are fully described in the appendix to this opinion.

. La.R.S. 47:2180 B reads as follows:
“The tax collector shall send to each taxpayer by certified mail, with return receipt requested, the notice prescribed herein, provided that in cities containing a population of over fifty thousand persons, the tax collector may either send this notice by certified mail or may make personal or domiciliary service on the taxpayer. After the tax collector shall have completed the service by the notices herein required, either by mail or by personal or domiciliary service, he shall make out a proces verbal stating therein the names of delinquents so notified, their post office addresses, a brief description of the property, the amount of taxes due and how the service of notice was made. Such proces verbal shall be signed officially by him in the presence of two witnesses and filed, in the parishes other than the parish or (sic) Orleans, in the office of the clerk of court for recording and preservation. In the parish of Orleans, such proces verbal shall be filed in the office of the state tax collector for the city of New Orleans and preserved for record. This proces *1155 verbal shall be received by the courts as evidence. The tax collector shall be entitled to collect actual mailing costs of each certified, with return receipt, notice, and mileage shall be charged for service of this notice. A like charge will be made if the property is adjudicated to the state or any subdivision thereof.”

. It is argued in plaintiffs’ brief that plaintiffs assumed the mortgagee was paying the taxes and that the sheriff could easily have gotten their correct address from the mortgagee.